# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA ex rel.
JOHN C. KROHN,

      Plaintiff,

vs.                                                                                                                    No. CIV 97-0644 JC/WWD

SUN WEST SERVICES, INC., FINE HOST
CORPORATION, WILLIAM C. SMITHERMAN,
EDWARD G. ENOS, DAVID R. BREWER,
WILLIAM D. DAVIS, and DOES I to XX,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendants' Motion to Dismiss, or in the Alternative, to Stay Proceedings, filed February 22, 2000 *(Doc. 35)*. The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that the motion is well taken in part and will be granted in part.

This matter also came on for consideration of Defendant William P. Davis' Motion to Dismiss Based on Lack of Personal Jurisdiction, filed February 17, 2000 *(Doc. 31)*. The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that the motion is not well taken and will be denied.

## I.    Background

John C. Krohn alleges his former employee, Sun West Services, Inc., its parent company, Fine Host Corporation,[1] and certain employees and officers of Sun West, violated the False Claims

---

[1] Sun West is a for profit food services management company providing food services to schools in Texas, Colorado, California, Arizona and New Mexico. On March 25, 1996, Fine Host purchased all of Sun West's stock, making Sun West a wholly owned subsidiary of Fine Host. Fine Host serves more than 400 facilities, including schools, in thirty-eight states.

Act (FCA), 31 U.S.C. § 3729, *et seq*., by defrauding and conspiring to defraud the United States Treasury. The FCA was created to reward private plaintiffs for bringing suit to vindicate the interests of the United States in combating fraud against the federal government. Under the FCA, the federal government has a maximum of sixty days to review the complaint and decide whether it wishes to intervene and prosecute the suit itself. *See id.* at § 3730(b)(2). In this case, the government declined to intervene, and Mr. Krohn proceeded to the district court on his own. *See id.* at § 3730(c)(3). Thus, Mr. Krohn brings the suit as relator pursuant to the *qui tam* provisions of the FCA which allow citizens to sue for fraud on behalf of the government and collect part of the governments's recovery. *See* 31 U.S.C. § 3730(b). Where, such as here, the government chooses not to intervene, the relator may receive between 25-30% of the recovery, plus expenses, fees, and costs. *See id.* at § 3730(d)(2).

Mr. Krohn alleges that Defendants submitted false bills and reports for reimbursement under the National School Lunch and School Breakfast Programs (Programs). Under the Programs, funds are distributed to local school food authorities as determined by the number of meals served that qualify. School food authorities are permitted to enter into contracts with food service management companies such as Sun West and are provided funds to cover costs, management and administration fees based on the number of meals served. To receive payment, the food service management companies are required to submit to the school authorities monthly bills, billing summary statements and operating reports showing the costs incurred in the operation of the program. Accordingly, Sun West provided food management services to schools and facilities subject to the Programs, and sought payment on a monthly basis for the operation of those services.

Mr. Krohn alleges that Sun West submitted statements to their school clients falsely representing Sun West's actual operating costs in reference to two items: employee related expenses and insurance. *See* Complaint at 7, filed March 7, 1997 *(Doc. 1)*. Mr. Krohn further

alleges that Fine Host was aware of and continued the fraudulent acts after they acquired Sun West. *See id.* at 4. In addition, Mr. Krohn alleges that the individual Defendants participated in the fraudulent acts and the conspiracy to defraud the government. *See id.* Finally, Mr. Krohn alleges that Defendants were unjustly enriched by their actions.

Two motions are presently before the Court. In the first Motion to Dismiss, Defendants challenge the constitutionality of the *qui tam* provisions under the FCA. *See* Motion to Dismiss, or in the Alternative, to Stay Proceedings, filed Feb. 22, 2000 *(Doc. 35)*. Defendants also seek dismissal of Mr. Krohn's claims of conspiracy and unjust enrichment. *See id.* In the second Motion to Dismiss, Defendant William D. Davis seeks dismissal for lack of personal jurisdiction. *See* Motion to Dismiss Based on Lack of Personal Jurisdiction, filed Feb.17, 2000 *(Doc. 31)*.

## II.     Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), the pleadings must be liberally construed, all factual allegations in the complaint must be accepted as true, and all reasonable inferences drawn in the plaintiff's favor. *See Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)). A complaint may be dismissed pursuant to Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**III.    Defendants' Motion to Dismiss or Stay**

Defendants seek dismissal of Mr. Krohn's complaint or in the alternative a stay in the proceedings, based on the allegation that *qui tam* actions are unconstitutional. In addition to their constitutional challenges to the FCA, Defendants argue that Mr. Krohn's claims for recovery based on unjust enrichment must fail because he has not suffered an injury in fact. Also, Defendants argue that because the alleged co-conspirators are corporate affiliates and their employees, there is no cause of action for conspiracy and Mr. Krohn's claims of conspiracy must fail.

Pending resolution of this Motion, a preliminary stay was granted by the Magistrate Judge in this case on February 22, 2000. *See* Order, filed March 10, 2000 *(Doc. 39)*. Defendant argued for a stay based on the recent holding in *Riley v. St. Luke's Episcopal Hosp.*, 196 F.3d 514 (1999), *reh'g en banc granted,* 196 F.3d 561 (5th Cir. 1999), in which the Fifth Circuit held that FCA actions in which the government does not intervene are unconstitutional. An *en banc* hearing granted in *Riley* has been stayed pending a decision in *United States ex rel. Stevens v. State of Vt. Agency of Natural Resources*, 162 F.3d 195 (2d Cir.1998), *cert. granted,* 119 S. Ct. 2391, 144 L.Ed.2d 792 (1999), a case currently before the Supreme Court. Therefore, Defendants have requested a stay of all proceedings in this case pending the opinion of the Supreme Court in *Stevens* and the *en banc* decision of the Fifth Circuit in *Riley*.

However, in *Stevens*, the question before the Supreme Court is whether *qui tam* relators have standing to sue *the government* in FCA cases despite the Eleventh Amendment bar against actions brought by persons against a state. The issue before the Supreme Court in *Stevens* has no bearing on the issues presently before this Court. Sun West and Fine Host are not government entities or agents of the government. Thus, after review of the memoranda and authorities submitted by the

parties, this Court can find no reason for further delay of a decision in this matter. Therefore, the preliminary stay is lifted, and Defendants' request to stay all proceedings is denied.

### A. Constitutionality of a *Qui Tam* Action

Defendants assert that *qui tam* actions such as this, in which the government does not intervene, are unconstitutional. Defendants' arguments are based on *Riley v. St. Luke's Episcopal Hosp.*, in which a three-judge panel held that FCA actions in which the government does not intervene violate the Take Care Clause of Article II, Section 2, Clause 2 of the United States Constitution. Additionally, Defendants claim that Relator Krohn lacks standing under Article III, Section 2, Clause 1 of the United States Constitution, and that the *qui tam* provisions violate the Appointments Clause of Article II, Section 2, Clause 2 of the United States Constitution.[2]

Defendants' reliance on *Riley* is misplaced. First, neither this District nor the Tenth Circuit has ever found any portion of the FCA, including the *qui tam* provisions, to be unconstitutional or unenforceable. Second, with the sole exception of *Riley*, all of the circuits which have addressed the constitutionality of the FCA have held that the *qui tam* provisions do not violate the United States Constitution. *See, e.g., United States ex rel. Hall v. Tribal Dev. Corp.*, 49 F.3d 1208 (7th Cir. 1995); *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993), *cert. denied*, 510 U.S. 1148 (1994); *United States ex rel. Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2d Cir. 1993), *cert. denied*, 508 U.S. 973 (1993). Therefore, it is unlikely that the holding of the three-judge panel in *Riley* will survive an *en banc* hearing and ruling from the Fifth Circuit Court of Appeals.

---

[2] These challenges to the constitutionality of *qui tam* actions were also addressed in detail by the Fifth Circuit in *Riley*, 196 F.3d 514.

While the Tenth Circuit has not specifically addressed the constitutionality of the *qui tam* provisions of the FCA, it has continually recognized the vital role of the FCA as a means of preventing fraud against the government. *See, e.g., United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 572 (10th Cir.1995). As the Fifth Circuit Court of Appeals provides no binding precedent for this Court, I decline to follow the decision in *Riley*. Instead, I join the overwhelming majority of Courts which have addressed arguments such as those presented here and have found the *qui tam* provisions of the FCA constitutional and enforceable. Therefore, Defendants' Motion challenging the constitutionality of the *qui tam* provisions of the FCA is denied.

### B. Standing for Claim of Unjust Enrichment

Under the common law doctrine of unjust enrichment, "a person shall not be allowed to profit or enrich himself inequitably at another's expense." *See Miller v. Bourdage*, 98 N.M. 801, 804, 653 P.2d 177, 180 (Ct. App. 1982). Defendants argue that Mr. Krohn has failed to show personal injury in fact sufficient to confer standing upon him for the purposes of an unjust enrichment claim. *See* Defendants' Motion at 20. Specifically, Defendants argue that even if Mr. Krohn's claims of fraud are true, Defendants have gained nothing at Mr. Krohn's expense. Therefore, they argue, Relator Krohn cannot recover on his claim for unjust enrichment.

Ordinarily, a third party would be unable to recover for unjust enrichment where the defendant has not profited at his or her expense. In other words, in a claim for unjust enrichment, "a defendant has something of value at the plaintiff's expense" which imposes a duty of restitution to the plaintiff. *See Miller v. Bourdage*, 98 N.M. at 804, 653 P.2d at 180. Here, if any restitution is due, it is to the government, not Mr. Krohn. *See United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1217 n.8 (9th Cir.1996) (holding that relators "sue on behalf of the government as agents of the government, which is always the real-party-in-interest"). Thus, it initially appears that Mr. Krohn has

no standing to bring a claim for unjust enrichment against Defendants. However, as this is a *qui tam* case brought under the FCA, Mr. Krohn has standing to sue on behalf of the government, arguably including recovery for unjust enrichment. Nevertheless, an unjust enrichment claim is "a common law cause of action separate and distinct from the FCA claims." *See United States ex rel. Long v. SCS Bus. & Technical Inst.*, 999 F. Supp. 78, 92 (D.D.C. 1998), *rev'd on other grounds*, 173 F.3d 870 (D.C. Cir.1999), *opinion supplemented*, 173 F.3d 890 (D.C. Cir. 1999). Thus, a separate analysis of standing is required.

In the few FCA cases which have permitted recovery for unjust enrichment, the government had intervened in the suit. In fact, at least one case has specifically found that a relator has no standing to sue for unjust enrichment where the government has not intervened. *See id*. Moreover, Mr. Krohn did not respond to Defendants' Motion on this issue. Therefore, given that the government has chosen not to intervene in this case and following the holding of *SCS Bus*, I hold that Relator Krohn has no standing to bring a claim for unjust enrichment. Therefore, Count IV of Relator's Complaint will be dismissed with prejudice.

### C. Corporate Conspiracy

The FCA provides for recovery for conspiracy to defraud the United States under 31 U.S.C. § 3729(a)(3). To satisfy the elements of a conspiracy to defraud claim, a plaintiff is required to demonstrate that (1) the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States, (2) one or more conspirators performed any act to effect the object of the conspiracy, and (3) the United States has suffered damages as a result of the false or fraudulent claim. *See United States v. Murphy*, 937 F.2d 1032, 1035 (6th Cir.1991); *see also Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 828 (S.D.N.Y. 1986) (stating elements of claim under pre-amendment subsection), *aff'd*, 817 F.2d 1007 (2d Cir.1987). It is basic in the law

of conspiracy that you must have two persons or entities to have a conspiracy. It is the general rule that the acts of the agent are the acts of the corporation, and thus, a corporation cannot conspire with itself any more than a private individual can. *See Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 724-25 (10th Cir.1984). Hence, Defendants argue that the claim of conspiracy against Sun West and its officers and Fine Host and its officers must fail.

However, there are exceptions to the general rule that a corporation cannot conspire with its own officers. One exception advocated by Mr. Krohn exists where the officer or agent has an independent, individual stake in the objective of the conspiracy. *See Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc.*, 45 F. Supp.2d 1255, 1258 (D.N.M. 1999). This is not such a case. Even taking all well pleaded facts as true, Mr. Krohn has failed to demonstrate that for the purposes of the conspiracy the individual officers were acting in anything other than their official capacity on behalf of their employer. The Complaint does not allege that any of the individual defendants had any independent or individual stake in the alleged conspiracy. On the contrary, the Complaint states that all of the acts of the individual defendants were performed in their official capacities as officers and agents of the corporate defendants and on behalf of the corporate defendants. *See* Complaint at 4-5.

It is also a general rule that a parent corporation cannot conspire with its wholly owned subsidiary. *See Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 772 (1984). Though *Copperweld* was decided in the context of an antitrust claim under the Sherman Act, the Supreme Court's holding has been extended to other situations in which "a parent and its wholly owned subsidiary have a complete unity of interest." *See Pizza Management, Inc. v. Pizza Hut, Inc.,* 737 F. Supp. 1154, 1165-66 (D. Kan. 1990) (quoting *Copperweld*, 467 U.S. at 772). Complete unity of interest between corporate affiliates occurs where "their objectives are common, not disparate [and] their general corporate actions are guided or determined not by two separate corporate

consciousness, but one." *Copperweld* at 771. The rationale in *Copperweld* is compelling enough to justify its extension to the tort of conspiracy as pleaded in this case.

By the very nature of their relationship, the parent corporation and its wholly owned subsidiary have shared goals, particularly economic ones, since "the subsidiary acts for the benefit of the parent, its sole shareholder." *See Pizza Management,* 737 F. Supp. at 1166 (quoting *Copperweld*, 467 U.S. at 771). In this case, both Sun West and Fine Host were contract food service management companies prior to Fine Host's purchase of Sun West. Thus, even before Fine Host became involved in the alleged fraud against the government, the two companies shared common objectives and goals.[3] The companies' common objectives continued under the umbrella of a single corporate structure upon the purchase of Sun West by Fine Host.

Furthermore, Sun West and Fine Host share not only the same economic goals, but also the same business pursuits. The alleged actions of Sun West and Fine Host are undeniably the result of one consciousness guiding the economic decisions of both Sun West and Fine Host. Sun West merely operates in the Southwest, while Fine Host maintains its management services in other parts of the United States. At no time have the interests or goals of the two companies diverged.

The Court recognizes that conspiracies to defraud the government can result in substantial injury to the federal government and/or its contractors, recipients and grantees. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion at 19, filed February 22, 2000 *(Doc. 37)*. However, for the forgoing reasons, the Court can find no means to support the allegation that these

---

[3] Relator alleges that Fine Host was aware of Sun West's practices at the time of its acquisition. However, Fine Host is not accused of defrauding the government prior to its acquisition of Sun West. This is insufficient to prove a conspiracy existed between the two companies at the time of the purchase because Fine Host is not alleged to have participated in any unlawful act. Therefore, the Court need only examine whether Relator can bring a claim of conspiracy after Fine Host is alleged to have participated in the fraud, namely after its purchase of Sun West.

Defendants conspired to commit the acts of fraud alleged in Mr. Krohn's complaint. Therefore, Mr. Krohn's claims of conspiracy are dismissed with prejudice.

**IV.     Defendant Davis' Motion to Dismiss for
         Lack of Personal Jurisdiction**

Defendant William D. Davis seeks to dismiss the claims against him for lack of personal jurisdiction. *See* Motion to Dismiss, filed February 17, 2000 *(Doc. 31)*. Davis, an Arizona resident alleges that he does not have the minimum contacts necessary for jurisdiction or in the alternative, that he is protected from suit by the fiduciary or corporate shield doctrine which prohibits the exercise of personal jurisdiction over an individual whose only contacts with the state are by virtue of his acts on behalf of a corporation. *See, e.g., Allen v. Toshiba Corp.,* 599 F. Supp. 381, 384 (D.N.M. 1984).

In order for personal jurisdiction to exist over a defendant, two prerequisites must be met. First, the defendant must be amenable to service of process pursuant to an applicable rule or statute. Second, plaintiff's assertion of personal jurisdiction must comport with the requirements of due process. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996).

   **A.    Service of Process**

The Federal Rules of Civil Procedure provide that service of a summons or filing of a waiver of service is effective to establish jurisdiction over the person of a defendant "when authorized by a statute of the United States." FED. R. CIV. P. 4(k)(1)(d). In the instant case, the FCA provides for worldwide service of process. 31 U.S.C. § 3732(a). The jurisdictional portion of the FCA provides in relevant part:

> Any action under § 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by § 3729 occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

*Id.* The first sentence of § 3732(a) refers to venue. *See United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 976 F. Supp. 207, 210 (S.D.N.Y. 1997). The second sentence limits the exercise of jurisdiction by providing that while a summons may be served anywhere, it may issue only from an appropriate district court. *See id.* An "appropriate" court is one in which venue is appropriate as described in the first sentence. *See id*. In this case, because acts of fraud are alleged to have occurred in New Mexico on New Mexico school districts, venue in this District is appropriate. Therefore, service of process was properly issued upon Defendant Davis by this Court.

**B. Due Process**

Under the Due Process Clause of the United States Constitution, in order for this Court to exercise personal jurisdiction, Defendant Davis must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Where, as here, the relevant federal statute permits worldwide service of process, the relevant inquiry is whether Defendant Davis has minimum contacts with the United States as a whole. *See Application to Enforce Administrative Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996); *Thistlethwaite*, 976 F. Supp. at 210. Since 1988, Defendant has been a resident of Arizona. Therefore, Defendant Davis clearly has minimum contacts with the United States.

Moreover, Defendant Davis' minimum contacts with the United States include sufficient minimum contacts with the state of New Mexico. While Sun West maintains their corporate offices in Arizona, the company was incorporated in New Mexico in 1987. As an employee of Sun West, and later of Fine Host, Defendant Davis is accused of submitting fraudulent reports and bill summaries to Sun West clients. These clients include local New Mexico school districts. Thus, the very acts of which he is accused constitute minimum contacts with the forum state sufficient to

subject him to personal jurisdiction in New Mexico. In addition, given the proximity between Arizona and New Mexico, the ties of Sun West and Fine Host to this state and the New Mexico residency of many of the expected witnesses, the exercise of personal jurisdiction over Defendant Davis would not offend traditional notions of fair play and substantial justice. *See International Shoe,* 326 U.S. at 316.

### C. Corporate Shield Doctrine

Despite the existence of minimum contacts with New Mexico, Defendant argues that this Court is prohibited from exercising jurisdiction over his person by nature of the corporate shield doctrine. The corporate shield doctrine seeks to protect an individual from the exercise of personal jurisdiction where his only contacts with a state are by virtue of his acts as a fiduciary of a corporation. *See Marine Midland Bank v. Miller*, 664 F.2d 899, 902 (2d Cir.1981). The underlying rationale of the doctrine is that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Id.*

Though the Tenth Circuit has recognized the corporate shield doctrine, *see Wilshire Oil Co. v. Riffe*, 409 F.2d 1277, 1281-82 (10th Cir.1969), I decline to apply it here. In *Wilshire,* the plaintiff corporation sued its employee in Kansas seeking indemnification for fees and fines paid on behalf of the employee. *See id.* at 1279. The fees and fines arose from the criminal conviction of the employee for acts he performed in his capacity as an employee and/or an agent of the company. *See id.* However, the plaintiff corporation sought to base personal jurisdiction over the employee on other non-illegal acts performed by employee on behalf of the company. *See id.* at 1280-81. The Tenth Circuit applied the corporate shield doctrine to prevent the exercise of jurisdiction. *See id.* at 1281.

In this case, the facts are very different from *Wilshire*. Here, the fraudulent acts of which Defendant Davis is accused are the very acts which render him subject to personal jurisdiction in New Mexico. More importantly, the Supreme Court opinion in *Calder v. Jones,* 465 U.S. 783 (1984), seems to reject outright the constitutional underpinnings of the corporate shield rule. In *Calder*, the Court upheld California's exercise of jurisdiction over a reporter who lived in Florida and who was employed by a Florida based newspaper. *See id. at 789*. The reporter had written an allegedly libelous article about a California resident, which the newspaper published and distributed in California. *See id.* at 788. The Court said that the reporter's intentional acts directed at California justified jurisdiction there. *See id.* at 789-90. The Court also held that California had properly exercised jurisdiction over the newspaper's president, who had edited the article. *See id.*

In reaching these results, the Supreme Court stated that each defendant's contacts with the forum must be "assessed individually." *Calder* at 790. The Court also recognized that while an employee is not subject to jurisdiction merely by virtue of the employer corporation's contacts with the forum, it does not follow that an employee is never subject to jurisdiction when he acts in a corporate capacity. *See Calder* at 790; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him). Though the Court did not mention the fiduciary shield rule by name, it stated that the defendants' "status as employees does not somehow insulate them from jurisdiction." *Id*.[4]

The Court's holding in *Calder* is not limited to the narrow context of a libel action. The Court compared the defendant newspaper reporter to a hypothetical welder who assists in the

---

[4] The underlying California appellate court had discussed the rule by name, rejecting its application. *See Jones v. Calder*, 138 Cal. App. 3d 128, 136, 187 Cal. Rptr. 825, 830-31 (1982), *aff'd,* 465 U.S. 783 (1984).

-13-

manufacture of a defective product, which his employer distributes in another state. *See Calder,* 465 U.S. at 789-90. The Court stated that if a difference existed between the welder and the reporter from the standpoint of personal jurisdiction, it was that the reporter had acted intentionally, with knowledge of the potential effects in the forum state, whereas the hypothetical welder had engaged in "mere untargeted negligence." *Id.* at 789.

In this case, Defendant Davis is alleged to have participated in the over-billing and fraudulent reporting of expenses. These acts are alleged to have been aimed at school district clients in New Mexico. Defendant Davis is also alleged to have met with other employees and agents of Sun West and Fine Host to discuss reports reflecting the revenues and expenses from each school district account. These reports are alleged to have reflected lesser amounts paid for certain expenses than those billed to the client. Thus, not only was Defendant Davis aware that the over-billing was occurring, but he is alleged to have been an active participant in the acts. Defendant Davis was also aware that it was affecting school districts in New Mexico. Therefore, unlike the hypothetical welder, Defendant Davis is alleged to have engaged in more than "mere untargeted negligence." *See Calder* at 789. The alleged acts were intentional and the potential harm to both the clients and the United States government was foreseeable. Therefore, the rejection of the corporate shield doctrine is in accord with the Supreme Court holding in *Calder* and its progeny. For the foregoing reasons, Defendant Davis is subject to personal jurisdiction in New Mexico and as such, his Motion to Dismiss for lack of personal jurisdiction will be denied.

## V. Conclusion

Although the Tenth Circuit has not addressed the issue directly, this Court chooses to follow the majority of courts which have consistently upheld the constitutionality of the *qui tam* provisions of the FCA. However, the Court finds that Relator's claims of conspiracy under the FCA must fail

because the corporations and their employees cannot be said to have conspired with one another under the facts of this case. In addition, the Court holds that Relator Krohn has no standing for recovery on behalf of the United States for a claim of unjust enrichment. Therefore, Defendants' Motion to Dismiss will be denied in part and granted in part.

Rejecting Defendant Davis' advocation of the corporate shield doctrine, the Court also holds that Defendant Davis has minimum contacts with the state of New Mexico sufficient for the establishment of personal jurisdiction.

Wherefore,

IT IS ORDERED that Defendants' Motion to Dismiss, or in the Alternative, to Stay Proceedings, filed February 22, 2000 *(Doc. 35)*, is hereby **denied in part** and **granted in part** in that Relator Krohn's claims for unjust enrichment and conspiracy to defraud the government are dismissed with prejudice.

IT IS ALSO ORDERED that Defendant William P. Davis' Motion to Dismiss Based on Lack of Personal Jurisdiction, filed February 17, 2000 *(Doc. 31)*, is hereby **denied**.

IT IS FURTHER ORDERED that the Order staying discovery issued on March 10, 2000 *(Doc. 39)*, is hereby **lifted**.

DATED this 11th day of April, 2000.

                         _____
                         **CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Relator:

    Charles A. Purdy
    Purdy Law Offices
    Santa Fe, New Mexico

Counsel for Sun West, Fine Host, and Brewer:

    Henry M. Bohnhoff
    Rodey, Dickason, Sloan, Akin & Robb
    Albuquerque, New Mexico

Counsel for Smitherman and Enos:

    Victor R. Ortega
    Montgomery & Andrews
    Santa Fe, New Mexico

Counsel for Davis:

    Duncan Scott
    Paul M. Kienzle III
    Scott & Kienzle
    Albuquerque, New Mexico